■ STEVEN CAMPBELL et al., Respondents, v EUGENE HABER et al., Defendants, and MICHAEL W. KELBERMAN, Appellant. [710 NYS2d 495] —Order affirmed without costs. Memorandum: We affirm for reasons stated in the decision at Supreme Court (Rath, Jr., J.). We add only that, in our view, the issue whether an implied physician-patient relationship arose between defendant Michael W. Kelberman, M.D. and Steven Campbell (plaintiff) cannot be determined as a matter of law on this record (*see, Rojas v McDonald,* 267 AD2d 130; *Bienz v Central Suffolk Hosp.,* 163 AD2d 269, 270). Plaintiff presented at the emergency room of defendant Faxton Hospital (Hospital), complaining of chest pains. Defendant Eugene Haber, M.D., the emergency room physician, examined plaintiff and ordered various tests. After obtaining test results that indicated to Haber that there might be heart muscle damage, Haber consulted Kelberman, a cardiologist, by telephone. According to Haber's deposition testimony, Haber informed Kelberman of plaintiff's symptoms and test results. Kelberman opined that the test results were not consistent with a cardiac event. Haber informed plaintiff and plaintiff's wife that he had consulted with a cardiologist, who had opined that the symptoms were not caused by plaintiff's heart. Haber testified that he discharged plaintiff in reliance upon Kelberman's opinion.

An implied physician-patient relationship may arise when a physician gives advice to a patient, even if that advice is communicated through another health care professional (*see,*

*Cogswell v Chapman,* 249 AD2d 865). "Whether the physician's giving of advice furnishes a sufficient basis upon which to conclude that an implied physician-patient relationship had arisen is ordinarily a question of fact for the jury" (*Bienz v Central Suffolk Hosp., supra,* at 270; *see also, Cogswell v Chapman, supra,* at 866). Here, as in *Cogswell,* the record contains evidence that Kelberman had "more than an informal interest and involvement in plaintiff's condition" (*Cogswell v Chapman, supra,* at 867) and thus there is an issue of fact concerning Kelberman's level of participation in plaintiff's treatment. Contrary to the conclusion of the dissent, there is a triable issue of fact whether Kelberman was "on call." According to Haber's deposition testimony, Haber telephoned Kelberman because Kelberman was the cardiologist "on call" that evening. Kelberman denied that he had an "on-call" relationship with the Hospital and the chairman of the Hospital's emergency department testified at a deposition that the emergency room did not have a cardiologist "on call." Although he was asked what an emergency room physician did when he or she felt it was necessary to consult with a cardiologist, the record does not contain his answer to that question. We therefore cannot resolve on this record the issue of Kelberman's relationship to the emergency department.

All concur except Kehoe, J., who dissents and votes to reverse the order insofar as appealed from in the following Memorandum:

Kehoe, J. (dissenting). I respectfully dissent and would grant the motion of defendant Michael W. Kelberman, M.D. for summary judgment dismissing the complaint against him. Steven Campbell (plaintiff) went to the emergency room of defendant Faxton Hospital (Hospital), complaining of chest pain. The emergency room physician, defendant Eugene Haber, M.D., conducted an examination, ordered various tests and, upon receiving the results, telephoned Kelberman, a cardiologist, awakening him at home. Haber related plaintiff's history, symptoms, and test results, as well as Haber's own opinion that the test results indicated a heart muscle injury. In response, Kelberman opined that Haber's findings were not consistent with cardiac disease and Haber, in reliance on that opinion, discharged plaintiff.

" 'Whether, under given circumstances, a duty is owed by a consulting physician to a treating physician and, ultimately, his patient is a question of law' " to be determined by the court (*Sawh v Schoen,* 215 AD2d 291, 293-294; *see generally, Tenuto v Lederle Labs.,* 90 NY2d 606, 612; *De Angelis v Lutheran Med.*

*Ctr.,* 58 NY2d 1053, 1055). As a matter of law, what transpired during the brief telephone call between Haber and Kelberman did not give rise to a physician-patient relationship between Kelberman and plaintiff. In the absence of such relationship, there is no legal duty and hence no basis for liability for medical malpractice (*see, Zimmerly v Good Samaritan Hosp.,* 261 AD2d 614; *Delacy v University Radiology Assocs.,* 254 AD2d 450).

Here, there was no express undertaking by Kelberman to provide medical care or treatment to plaintiff, nor are there any facts from which an undertaking can be inferred. Kelberman did not undertake to supervise Haber or plaintiff's case, nor was he in any position to do so (*see, Sawh v Schoen, supra,* at 293; *Kleinert v Begum,* 144 AD2d 645, 647). Haber never formally engaged Kelberman as a consultant, but merely called to ask his opinion. Kelberman does not know plaintiff and never saw him or his chart before rendering his opinion (*see, Ingber v Kandler,* 128 AD2d 591, 592). Under the circumstances, Kelberman was at a severe disadvantage in rendering any opinion and was limited by whatever information Haber may have imparted to him. Not only was there no prior or subsequent relationship or any prior, contemporaneous, or subsequent direct contact between Kelberman and plaintiff, there was no direct communication between them. Kelberman may have imparted an opinion to Haber, but he did not render treatment, diagnosis, instructions or advice to the patient (*see, Zimmerly v Good Samaritan Hosp., supra; Ingber v Kandler, supra,* at 591-592). In sum, this case involves mere discussion of a particular case between colleagues, one of whom was plaintiff's treating physician and one of whom had no connection whatever with plaintiff (*see, Ingber v Kandler, supra,* at 591-592; *see also, Cintron v New York Med. Coll. Flower & Fifth Ave. Hosps.,* 193 AD2d 551, 552). Liability should not be predicated on the sort of informal consultation between professionals that occurred here (*see, Sawh v Schoen, supra,* at 294; *Ingber v Kandler, supra,* at 591-592). To do so would serve to discourage consultation among physicians, which would impair rather than improve the state of medical knowledge and the quality of patient care (*see, Sawh v Schoen, supra,* at 294).

There is no genuine material triable issue of fact whether Kelberman was "on call" at the Hospital (*see, Cogswell v Chapman,* 249 AD2d 865, 867). Haber's assertion that Kelberman was "on call" is conclusory and refuted by the deposition testimony of those individuals best positioned to know what relationship, if any, Kelberman had with the Hospital. Kelber-

man testified that he was not an agent or employee of the Hospital and had not contracted to provide emergency room coverage. Similarly, the chairman of the Hospital's emergency department testified that no cardiologists were "on call" or otherwise contractually obligated to provide consultation or other services to emergency room patients or physicians. Kelberman should not be denied summary judgment based on Haber's supposition that Kelberman was the cardiologist "on call." (Appeal from Order of Supreme Court, Wyoming County, Rath, Jr., J.—Summary Judgment.) Present—Pigott, Jr., P. J., Hayes, Wisner and Kehoe, JJ.